Good morning and may it please the court. My name is David Novak and I represent the City Colleges. With me today are my colleagues on the case, Jim Thomas and Jim Daley. Before we begin, may I ask you to stand and be recognized for the work you do for the community college district? May I approach the bench to offer two documents unopposed by plaintiff? Well, before you do that, why don't we allow counsel to state his name for the record as well? Good morning. I'm Brian Holman, H.O.L. 1A on behalf of Plaintiff Pat Pepplety on Mario De La Haye. Very well. May I approach the bench to give two short documents? One is a section from the Code of Civil Procedure. The other is a transcript as part of the record. I just think if you have them while I'm talking, it will facilitate your understanding of the argument. Any objections? No, I think we already got them. Yeah, we already got this. You have this? Yeah. Oh, good. We have the code just in case. All right. Thank you. Okay. I think counsels are both aware of the proceedings of the process in this court. You have 15 minutes to argue, and would you wish to reserve some time for rebuttal? Fifteen? Okay. Your Honor, we are here today because plaintiff divided the litigation over the process that led to his termination into two pieces. First, a lawsuit in the law division filed by the lawyer here today over his demotion. And second, a lawsuit in Chancery filed by another set of lawyers a year later over his termination. The termination occurred a mere two or three days prior to the filing of the demotion lawsuit. Nothing prevented the lawyer here today from amending the demotion lawsuit to include the termination. But that did not happen. Instead, for some unknown reason, plaintiff chose to harass the city colleges with a second lawsuit filed by other attorneys. This appeal is about plaintiff's thus far successful attempt to avoid the consequences of unabashed claim splitting. Claim splitting, one jurist has observed, is to be deprecated. And that is surely true here for this claim splitting. It's particularly noxious for having been engineered not just by one firm, but two colluding law firms. Well, you know when he filed this lawsuit that it pertained to the same identical discharge, pretty much. No. I know one was for the head of the department, the other's for employment totally. But it contained about the same circumstances. So why didn't you immediately move to dismiss it and wait several months before you did anything at all? The second lawsuit? Yeah. Well, to give you a truthful answer to that, when we got that lawsuit in, the termination lawsuit, that was the end of a process which had been started by another law firm in seeking to arbitrate, which we refused to do. I'm going to send it to you. I'm coming to your answer as truthfully as I can. Okay. When we saw the lawsuit, the three of us, who are fairly expert in public policy law, we recognized that it had no merit, substantively. We recognized that the account for mandamus was invalid because the plaintiff had not requested the relief he sought. We recognized that the claim for due process was defective because he already had all the due process to which he was due. And the declaratory judgment was also false because it was nothing more than a rehash of the first and second. In addition, it was cleared with laches. So when we saw that complaint, we were not even thinking about raised judicata, two-foot lawsuits, claims footing. We just frankly were not thinking about that. We did what we think the responsible thing for our client was, which was to get rid of that lawsuit. When we got the result, I said to myself and later to my colleagues, I wonder if this is raised judicata. But in further answer to your question, I'm giving you the true process of it. The other thing is we didn't have to file it then. Under 2619D, and I'll probably get to that in my argument, the fact that we filed a motion did not preclude us from filing an answer had we been unsuccessful. So that wasn't going through our mind necessarily at the time of the motion. But had we lost that motion, we would have filed a 2619A3 motion somewhere. Did that serve? You didn't give the other court notification. Pardon me? You didn't give the other court notification that the matter was disposed of or pending. We gave the other court what we did. I'm trying to give you. The first and only thing we did in the termination lawsuit, the second lawsuit, was to move to dismiss it. Right. When we got that result, we waited 30 days for the time to appeal to run. Because it's unclear under Illinois law whether when you're moving for race judicata and there's a judgment out there whether you have to wait for the right of appeal to expire. So you were in fact waiting to be able to claim race judicata in the second lawsuit. Why then would it not have occurred to you that there might be a claim splitting issue here? There might be what? A claim splitting issue. By that time, after we won the termination lawsuit, as I said, it occurred to me, maybe this is race judicata and research turned out to prove me right. But we did wait after that dismissal until the right to appeal had expired. Then we put together our motion for race judicata in the demotion case. So you bring out your sword at that point. Well, I don't think it's fair to put the city colleges in the position of being a wrongdoer here. We are not the one that filed the two lawsuits. We are not by two orders. We defended our client. And the body of law, and you'll read this in each and every state in the United States, is that a person that splits his claim does so at his or her own risk. It's not the defendant. The doctrine of race judicata, the doctrine against claim splitting, is precisely to protect the defendant. I think what Justice Smith is alluding to is that one of the requirements to prevail on this claim splitting issue is that you must let one of the courts know that there are two pending lawsuits, and you didn't let them know in the second lawsuit that there was something pending. Therefore, although I know you're going to point to Part D of 619, but claim splitting is common law, and that which is prevailed over statutory law, and that says you've got to let that court know. Let me get to that question right now and get to it straight away. What that question really means is when do you have to do it? When do you have to do it? The day after the termination lawsuit was filed, I didn't have to walk into one court or another and say, Judge Democopoulos, there's already a lawsuit filed. I didn't have to go back to the law division and say to the judge, there's been another lawsuit filed. I've got a certain amount of time to do that, and that is prescribed by the Code of Civil Procedure. This is not in case law. This is something that is enshrined in our Code of Civil Procedure that governs how we practice. And I'd like to get to that right now. So the first question I think posed by the certified question is how long do we have to object? And that question is necessitated by Comment A to Section 26 of the Restatement, which says, and I think Judge Cobb was referring to this, the failure of the defendant to object to the splitting of the plaintiff's claim is effective as an acquiescence in the splitting of the claim. So how long do we have to object? And the answer to this question is this. A defendant must object to claim splitting no earlier than the time an answer to the complaint is due. Well, the question is not how long do you have to object. The question, because, you know, as plaintiff states, is when does acquiescence take place? And he's saying the acquiescence took place when you addressed his second lawsuit on the merits rather than objecting. First off, I think I would not say that our attacking and winning and defeating the lawsuit on the merits is acquiescence. To me, that is a distortion of the English language. And let me give you an example, and I think you've all been around long enough to realize this. In the early, late winter of 1942, Jimmy Doolittle led a force of planes from an aircraft carrier and bombed Tokyo three months after the Japanese had attacked Pearl Harbor. Would you call that acquiescence? That's exactly the same thing. It is the opposite of acquiescence. And moreover, what controls here, that timing issue, is in fact to 619-B. But doesn't that pertain to the second lawsuit? What does it have to do with the first lawsuit? This says you can – We don't have to object in both courts. I'm saying 619 says you can dismiss a suit if you raise this defense by motion and it gives you timeframes and it says you can dismiss this particular lawsuit. We're talking about the second lawsuit with 619, right? 619 – So what does that have to do with the other lawsuit? I think, first off, your honors have the power to – The certified question is – has to do with what happened in the second lawsuit. Because the certified question is about the filing of a motion on grounds other than that there's another case pending. Is that – We haven't drafted that certified question. We drafted it. Let me just read something to you. The certified question here explicitly asks whether a defendant acquiesced to a claim splitting solely. You use the word solely. And that may be your biggest burden because you shouldn't have used it. Solely by filing a successful motion to dismiss in an existing filed lawsuit on a basis other than in section 2619-3. So you left the door open so we can only answer almost probably in one way because this question is a bad question. Well, be that as it may, and I don't think I agree with you, your honors. I know my position. That it's a bad question. But the question pertains to what went on in the second lawsuit, the later lawsuit. And that's the question that was certified. Now, you folks are free, obviously, to use your power to the fullest extent. But the question has to do with what happened in that second lawsuit. And that's why I direct your attention to 619. And let's go beyond that for a second, though. And let's talk about – Let me just give you a fair shot at it. Here's my thinking. All 619-D says is that had you not prevailed on your motion, then you could have come back and said, okay, there's another lawsuit pending and have it dismissed. But we still have the question, if we come back to the first lawsuit, did you acquiesce before filing this 619-D by litigating on the merits? No. First off, the litigation that we did on the merits was initiated – either happened or was initiated by an order that was entered in the first lawsuit before the second lawsuit was filed. So we couldn't have possibly acquiesced in plain flitting by what we did there before the second lawsuit was filed. No. But what I'm saying – But could I – I think – I think you misunderstand my question. Can you ask me one exact question? You're misunderstanding – You're missing my point. You're missing my point. I'm asking you, if you lost your motion, let's say for some reason the judge had a bad day, you missed that first motion and you lost. I think 619-D says, well, now you can come back and move to dismiss because there's two lawsuits pending. So we could. Okay. So once that happens, let's say you win that. But once that happens, the question still comes around, did you acquiesce by litigating on the merits before you raise 619-D? Let me answer that question directly. There is not a great deal of literature out there on what acquiescence is, how it's defined. And I think if you review the cases cited in our briefs, you'll find four definitions of acquiescence, all of them from this district, coincidentally. The most recent definition is in Deinerstein from 2016, where the court wrote, the court went on and said it was looking for conduct, quote, implying that a refiled lawsuit would be rivaled or to, quote, a willingness to move forward with a refiled action. Piagentini from 2009 provides the second and third definitions. The second somewhat resembles the Deinerstein formulation and draws from Black's Law Dictionary, to accept passively or to give implied consent. The third definition coheres well with the general understanding of the word by stating that acquiescence is simply waiver, or in the words of the court, that acquiescence subsumes waiver. Waiver, of course, in the classic formulation, is a voluntary and intentional relinquishment of an unright that must be proved by clear evidence. The fourth and final definition appears in Quintus, and Quintus defines acquiescence as, quote, allowing both cases to exist simultaneously. Now, defendant's only action in the termination lawsuit, as you realize, was a successful motion to dismiss on grounds other than 2-6-1983, and our position is that comes no more close to fitting any of the definitions. Defendant's motion did not allow the termination case to go forward, to exist and go forward, but instead put an end to it. What did you do in the second lawsuit to indicate you objected to having two cases pending in the same manner? Well, my point would be that the finding of a successful lawsuit, or successful like that, is a successful motion, is objection. When you objected to a lawsuit, what did you do to object to there being two lawsuits? If you do not accept that they, that, I mean, you didn't do anything to say there's two lawsuits here about the same issue in the second lawsuit. Well, I think in the first district, our motion from Braves v. McCulloch says that we're objecting to the claim of splitting. But that comes up only in the context of 2-6-15-D when you are at the point at which time you may be filing an answer, which presumes, by the way, that you did not succeed on an earlier motion to dismiss. But that is where the criminal civil procedure comes down. We had until that point. That point never came. The fact that that point never came doesn't mean we're at rest. Well, if you go to the merits, you're not saying this suit should be dismissed because there's another claim pending between the parties. You're saying, ah, this suit is no good because of X, Y, and Z on the merits. And you go to the merits before you object to anything having to do with two claims on the same, two lawsuits on the same claim. Let me move to a couple of cases that I think my opponent says, which really talk about the type of conduct that is recognized as acquiescence. Thorley Forreston is from the second district. And it involved one lawsuit in DuPage County and another in Cook County. Now, when the defendant in the DuPage County case tried to dismiss it on the grounds of race unicada, the circuit court granted the motion, but the second district disagreed. And it reversed holding the defendant in acquiescence to the concurrent existence of the two suits. The second district found acquiescence from the facts. First, that the defendant had told the Cook County judge that the DuPage action was indeed vile and set for trial. And second, that the defendant in the DuPage action had answered the complaint without 2619A3 language, raised other affirmative defenses, and engaged in pretrial discovery. That is actually far in excess of anything the city colleges did in this lawsuit. The instant case which also had- I'm sorry, which case was that last one? That was Thorley Forreston. And the other case I would draw your attention to, and these are really, I think, the main cases on which plaintiff relies, is Piagentini. And I already discussed that case a moment ago, I think, for the definitions of acquiescence that are provided. But here's what happened and why the court found acquiescence. And I'm going to let the second- Excuse me. But isn't Piagentini a case that involves a voluntary dismissal and some issue with respect to the commonality of the claims? Isn't that a different question than what we have here? I think it did, but it really comes down heavily on what acquiescence is and acquiescence by action. And here's what the court said. Ford filed several responses that included affirmative defenses, but made no mention or raised due code. Ford then proceeded to respond to discovery, retain experts, attend depositions, and defend the lawsuit for three and a half years. By contrast, the only thing that the city colleges did in the termination of the lawsuit, beyond filing its appearance, was to file a successful motion to dismiss right off the bat. And we say that had we been unsuccessful, we still would have been able to argue 2619A3 in an answer. But really, one successful motion, at least in my opinion and the city colleges' opinion, comes nowhere near the type of conduct that the courts have found to constitute raised due to code. And let me be clear. Mr. Harmon, you might want to get to your most salient point. Your time is up. Time is up. I'm sorry. It's past. We'll give leeway, but, you know, save yourself a few minutes. We would ask you to answer the question in the city colleges' favor. Thanks. You've still got a few minutes left for rebuttal, if you wish. Mr. Harmon? Good morning, and may it please the courts. The University Supreme Court adopted the exceptions of raised due to code, set forth in Section 26-1 of Restatement Second of Judgments. That exception states that the defendant fails to object to claim splitting in either action. He has an acquiescence to claim splitting. That's exactly what the defendant did in this case. He did not object in either case, and that's how the trial court ruled in favor of the plaintiff in a response to the motion for summary judgment, applying that exact acquiescence exception that the Supreme Court and the United States First District has adopted. As Judge Smith has pointed out, we don't have to advance the language of the certified question to provide the answer. Does the defendant acquiesce to claim split solely by following the successful motion? If, by the plain language of this question, solely means that they have failed to object in either case to the claim splitting, so the acquiescence exception that the University Supreme Court has adopted applies. Also, the language states a successful motion to dismiss. The defendant is trying to rely on 619-D to say that had a motion been unsuccessful, we would have been able to file a 2619-A3 from the defense in an answer. According to the question presented before this court, a successful motion to dismiss would indicate that there is no chance for the defendant to file an answer. The time has expired in which they had to object in De La Haye 2 to a claim splitting, not to mention the fact that for a period of 8 months in De La Haye 1, which is the case at bar and which is the case in which the court applied the acquisition exception, they never made an objection during the entire time period. What the defendant is asking this court to do is create some kind of exception to the exception of acquiescence. There is no basis for that. The coercive procedure provides the avenue which the defendant consciously chose not to take. 2619-A3 allows them to bring a motion to dismiss immediately in De La Haye 2, stating that there is a similar claim against the same parties pending in the law division, De La Haye 1. They chose not to do that. That was their tactic, their decision, and it failed to allow them to claim restriction in De La Haye 1. They filed a motion to dismiss under 2619 in De La Haye 2, but they didn't raise 2619-A3. They could have done that and still received the decision from the transfer court on the merits and still would have had the opportunity to seek restriction in De La Haye 1 had they chosen to do so because the exception would not have applied at that point. The defendant argues that compared to the other cases that you have cited, the actions which resulted in the finding of acquiescence in those cases was much more extensive than what took place in this case, which was one motion as opposed to years of discovery and so on in the other cases. How do you respond to that? I respond in two ways, Your Honor. One, in De La Haye 1, the law division case, in which they raised the raised judicata in their motion for summary judgment, they made no objection whatsoever. So I don't think you can look at just what they did in De La Haye 2. I think pursuant to the language of the acquiescence exception adopted by the Supreme Court, it states what they did in both cases. You have to look at both. How long were the cases pending simultaneously? I'm sorry? Over what period of time were both cases pending at the same time? They filed a motion for summary judgment approximately eight months after De La Haye 2 was filed. So De La Haye 1 was pending for approximately a year before De La Haye 2 was filed. They immediately moved from De La Haye 2 for motion to dismiss. That was granted, and then approximately eight months after the filing of De La Haye 2, they brought the motion in De La Haye 1 for summary judgment under the theory of raised judicata. I mean, maybe I'm going to take my question wrong. De La Haye 2 was filed. Correct. And sometimes while De La Haye 1 was filed, De La Haye 2 got filed, right? And then De La Haye 2 eventually got dismissed. How long was the lifespan of De La Haye 2 during the lifespan of De La Haye 1? Approximately eight months. Okay. Well, 30 days less than that. Because they didn't wait for one month to see whether or not De La Haye 2 was going to be appealed before they raised the raised judicata. Is the exact language in the certified question, or is the exact wording or word used concurrently filed lawsuits, and does that matter that they weren't concurrently filed with respect to the acquiescence issue? I think my interpretation of the concurrently filed lawsuits, the two concurrently filed, means that they were pending at the same time, not that they were necessarily filed on the same, about the same date. Because apparently they were not. They were not. De La Haye 1 was pending for over a year prior to the filing of De La Haye 2. So it's not concurrently filed, it's concurrently existing. Concurrently pending, yes. Does that matter that they're concurrently pending as opposed to concurrently filed at all to the analysis? No, because the case that they cite, employer retirement systems versus a credit union, they were two cases filed at the same time. So I think that, and also in Dinerstein, there were two cases filed on the same date, one in DuPage County and one in Cook County. So I don't think it makes a difference whether they were filed concurrently at the same time or whether they were pending concurrently at the same time. The question is, did, in either one of those cases, was the objection on the 2619A2? If they were concurrently filed, though, might there be a stronger argument for plaintiff that they didn't acquiesce if they were concurrently filed because they're moving in one case, or is it still that this eight-month span between the time that they do anything, bring a motion to dismiss, and De La Haye 1? I don't think the eight-month period is insignificant, but even if it was rectified quicker than that and was a shorter period than eight months, the fact remains that 2619A3 is provided for the very purpose of that situation. Filing a motion to dismiss in De La Haye 2 under 619A3 and the case is dismissed. There is no defense that the plaintiff could raise at that point to 2619A3. There were two cases pending at the same time, and that case would have been dismissed, and the story would not be here today. So the fact that there was an eight-month time period, I don't think it was to help the plaintiff's position that for eight months while they did discovery in De La Haye 1, which, again, is the motion in which they seek race juricata, they said nothing. They did nothing. They didn't advise the court. The first time that the law division was advised that there was another case pending was when the motion for summary judgment raising race juricata was dropped eight months after the fact. So they failed to, in essence, acquiesce in both cases. 2619A, 2619D would only apply if there was not a final judgment. The motion to dismiss was unsuccessful. So that's contrary to the language of the 308 question before this court. But in addition to that, if there was no final judgment, there would be no race juricata in De La Haye 1. They needed that final judgment in De La Haye 2 in order to seek race juricata in De La Haye 1. So that's precisely what they did in this matter. I don't dispute what counsel is saying, and it is heartfelt when you try to say in your mind what their thought process was. But their thought process clearly was that De La Haye 2 had no merit. We get that dismissed. We can dismiss De La Haye 1 based on race juricata. Whether that was their initial thought or not, at some point they developed that theory. That's exactly what the courts are trying to do. You can't sit in the weeds and wait and hold back and not make an objection to plain suing so that you have this race juricata defense set up. That would be unjust, as the court in Farrelly v. Larson concluded. Unless there are any other additional questions from the court, I would rest on my pleadings. Thank you. Thank you, Mr. Holman. Ms. Novak? Brief rebuttal. I'd like to make three basic points. One on fairness. Let it not be forgotten that the plaintiff had his day in court on his termination. That termination was decided on the merits. So he's not been treated unfairly. He's not been deprived of anything. The termination has been decided and decided against him. Number two, on umpteen occasions in his opposition brief, plaintiff quotes the circuit court about not objecting in either form. But in each and every case, plaintiff omits the first sentence of that paragraph, which states what plaintiff's position was at the time of the court's decision on race juricata. Let me read it. Plaintiff argues that even if the claims in this case, the demotion case, constitute impermissible claim splitting, defendant acquiesced by not objecting in the chancery case, which is demotion two. So the issue has always been what went on in the second case, the termination case. I'm sorry. Finally, I return to where I was intending to start the argument by getting straight to the point. There is an Illinois decision that requires the certified question to be answered in the city college's favor, that requires reversal of the circuit court's decision, and that requires dismissal of the litigation in its entirety. The case is Treadway. In Treadway, the Fifth District specifically considered the question of whether filing a motion to dismiss on grounds other than the existence of multiple lawsuits constituted acquiescence for the purpose of race juricata. The court held that it did not. In Treadway, the plaintiff filed lawsuits against the defendant in 2003 and again in 2005. The defendant in the 2005 action, the same as in the 2003, but in the 2005 action, the defendant originally filed an answer that asserted, among other things, that the claims were barred by section 219A3 of the code because there was not a case pending between the same parties for the same cause. Subsequently, however, the defendant withdrew his answer and affirmative defenses, which meant they were nullity, as we explained in our brief, and moved to dismiss on the ground of preemption, and the circuit court granted that opinion. Meanwhile, the 2003 action was dismissed on another ground. In that case, they put the court on notice. I don't know. It says right in it, and I'm saying that's your problem. You didn't put notice on either end. Your Honor, I respectfully disagree. Oh, I know you do. The point of the case is that that original answer was filed. It doesn't matter. They noticed.   in one or both courts. There was no notice in the 2005 case other than the answer that was withdrawn, and there's abundant Supreme Court authority, which we cited in our brief, that says when a party withdraws an answer in affirmative defenses, it's like it never happened. You're walking up the wrong end of a bridge. Well, Peter, that is. I mean, if the court says what it said and goes and says there was notice, you can't unwind what they said. Here's what I think. I know you want to interpret it another way, but it isn't the way it comes out. Here's what the court said, and the court said that acquiescence did not apply on account of the successful motion on grounds other than 2619A3. It said, quote, we declined to find that this subsequent motion to dismiss, like ours, on other grounds amounts to acquiescence. Pursuant to section 2619D of the code, the failure to raise a defense by motion does not preclude a party from raising a defense by answer. The court went on. Accordingly, the defendant will be free to raise judicata as an affirmative defense if this case were remanded to the circuit court. So the fact that there was a successful motion to dismiss did not nullify the effects of 2619D. The appellate court simply went ahead and on its own said there's enough to raise judicata here, end of case, and that's what I think should happen. That's the answer to the certified question. And again, if I have any time left, I do want to point out that claim splitting is designed to protect the public. And in this case, the public is implicated in two ways. First, two cases that really I don't think anybody would disagree should have been won, wastes the resources of the court system and therefore wastes the resources of the public because the courts exist to serve the public. Similarly, the city colleges is a public entity. And litigation that wastes its money wastes the public's money. This is an egregious example of claim splitting, but it's also one in which basically the plaintiff has had his day in court. This should not go on. We ask you to answer the certified question in the city college's behavior, to reverse the circuit court, and to dismiss the case in its entirety with prejudice. Thank you. Mr. Mormack, Mr. Holman, thank you very much. You argued eloquently. We appreciate the argument and the time taken. The matter is taken under advisement. This position will be issued in due course. Thank you.